**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WENDY A. WESTWOOD, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | No. 14-3035 |
| Acting Commisioner of Social Security, | : | |
| *Defendant*. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                               JULY 6, 2015

**I.     INTRODUCTION**

Pursuant to 42 U.S.C. § 405(g), Wendy A. Westwood seeks review of the final determination of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). After independent consideration of the Administrative Record, submitted pleadings, U.S. Magistrate Judge Carol Sandra Moore Wells' Report and Recommendation ("R&R"), the Defendant's Objections thereto, and Ms. Westwood's Response to the Objections, the Court sustains in part and overrules in part the Defendant's Objections, and adopts in part and rejects in part the Report and Recommendation. For the reasons that follow, the Court finds that the Administrative Law Judge's ("ALJ's") determination of Ms. Westwood's disability was unsupported by substantial evidence and remand is warranted.

**II.    BACKGROUND**

Ms. Westwood was 43 years old on her alleged disability onset date and 47 years old on the date of the administrative hearing. (R. 72). She completed high school and has past relevant

1

work as a data entry worker, office clerical worker, and kennel assistant. (R. 53, 72). She is married and lives with her husband. (R. 31).

At the administrative hearing before the ALJ on October 25, 2012, Ms. Westwood testified that she suffers from fatigue, the cause of which is still unclear. (R. 35-36). She described her episodes of fatigue as inconsistent and unpredictable, sometimes lasting for a day and sometimes lasting for weeks. (R. 48). Ms. Westwood also testified that she experiences anxiety, depression, and panic attacks (R. 37, 41, 43), and feels disoriented and anxious in public crowds as well as around family members (R. 45-46).

At the same hearing, the ALJ asked a vocational expert to consider whether jobs exist in the national economy for an individual of Ms. Westwood's age, education and background, with no exertional limitations, a claimed need to avoid temperature extremes, ability to perform only routine, repetitive tasks, to tolerate no more than occasional contact with co-workers and supervisors, and ability to tolerate only infrequent changes in the work setting. (R. 53). The vocational expert responded that such an individual could perform the jobs of document preparer (350 positions in the local economy, 175,000 nationally); cleaner/housekeeper (550 positions locally, 760,000 nationally); and store laborer (260 positions locally, 155,000 nationally). (R. 53-55). The vocational expert also testified that a person could not work if he or she would be absent from work three days each month, (R.55), and that if a person's inability to maintain attention and concentration resulted in a 20 percent (20%) decrease in productivity, he or she would be on the cusp of unemployability, (R. 55-56).

On November 7, 2012, the ALJ denied Ms. Westwood's claim for DIB and SSI. In that decision, the ALJ concluded that Ms. Westwood's "medically determinable impairments could

2

reasonably be expected to cause the alleged symptoms; however [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (R. 70). But despite the ALJ's promise to discuss this finding "in detail below," *id.*, the ALJ did not clearly explain which of Ms. Westwood's purported symptoms (e.g., extreme fatigue) were credibly established and which were not. At the same time, the ALJ assigned significant weight to the opinion of the state agency psychologist, who found that Ms. Westwood has moderate difficulties in maintaining concentration, persistence, or pace, and experiences symptoms of depression, anxiety, and fatigue. (R. 87-88).

The Appeals Council denied review of that decision on April 7, 2014, and Ms. Westwood then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). The case was referred to Magistrate Judge Moore Wells for a Report and Recommendation, and Magistrate Judge Wells recommended granting Ms. Westwood's request for review solely on the grounds that the ALJ failed to craft an adequate residual functional capacity or pose a proper hypothetical to the vocational expert. The Defendant has objected to that recommendation.

### III.   STANDARD OF REVIEW

When a party makes a timely and specific objection to a portion of a magistrate judge's Report and Recommendation, the district court applies a *de novo* review to the issues raised on objection. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. *Id.*

However, the district court may review the ALJ's final decision only in order to determine "whether that decision is supported by substantial evidence." *Hartranft v. Apfel*, 181

F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Stated differently, the court "is bound by the ALJ's findings of fact if they are supported by substantial evidence on the record." *Plummber v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). The court may not "weigh the evidence," *Williams v. Sullivan*, 970 F.2d 1178, 1183 (3d Cir. 1992), and "will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the court] would have decided the factual inquiry differently," *Hartranft*, 181 F.3d at 360.

An ALJ's decision must present sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). While the ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially significant, probative evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706).

A claimant bears the burden of proof on the issue of disability. In other words, a claimant must show that he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the regulations implementing the Act, the

Commissioner uses a five-step sequential process to determine whether a person is "disabled."[1] The claimant satisfies the burden of proving disability by showing an inability to return to his past relevant work. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005). Once the claimant makes this showing, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, the claimant has the ability to perform specific jobs existing in the economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Rutherford*, 399 F.3d at 551.

### IV. DISCUSSION

Magistrate Judge Wells recommends remand and concludes that the ALJ committed reversible error by not "explicitly includ[ing]" Ms. Westwood's moderate difficulties with concentration, persistence, or pace "both in the [residual functional capacity] and [in the] hypothetical question posed to the [vocational expert]." (R&R at 9). Defendant objects to this recommendation on three grounds. First, Defendant argues that the ALJ did not have to "explicitly" include Ms. Westwood's moderate difficulties with concentration, persistence, or pace in the residual functional capacity or the hypothetical question posed to the vocational expert. Second, Defendant argues that to the extent the ALJ was required to reference Ms. Westwood's moderate difficulties with concentration, persistence, or pace in the residual functional capacity or the hypothetical question posed to the vocational expert, the ALJ did so by noting that Ms. Westwood was limited to work involving "routine, repetitive tasks . . . and

---

[1] This process requires the Commissioner to consider, in order, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment or severe combination of impairments; (3) has an impairment that meets or medically equals the requirements of a listed impairment; (4) has a residual functional capacity to perform the claimant's past relevant work; and (5) is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 416.920.

infrequent changes in the work setting." (R. 69). Third, Defendant argues that *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), on which Magistrate Judge Wells relies, is inapposite because, in that case, the ALJ considered only the *frequency* of plaintiff's difficulties with concentration, persistence, or pace, rather than the *severity* of such difficulties.

Under *Ramirez*, the ALJ is not required to explicitly mention Ms. Westwood's moderate difficulties with concentration, persistence, or pace in the residual functional capacity or the hypothetical to the vocational expert. In *Ramirez*, the ALJ found that the claimant "often" experienced "deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner (in work settings or elsewhere)." 372 F.3d at 549. However, the ALJ's hypothetical to the vocational expert did not mention that particular limitation. Our Court of Appeals found that the ALJ's hypothetical was error because the hypothetical "did not accurately convey all of Ramirez's impairments, and the limitations they cause." *Id.* at 552. The Court of Appeals found that asking the vocational expert a hypothetical limited to jobs involving "simple one to two step tasks" did not take into account deficiencies in pace because there is a possibility that jobs involving simple tasks involve quotas that cannot be met in light of deficiencies in pace. *Id.* at 554. Since *Ramirez*, the Third Circuit Court of Appeals has clarified that the ALJ need not use the magic words "difficulties in concentration, persistence, or pace." Rather, all *Ramirez* mandates is that the ALJ must include all credibly established limitations in the residual functional capacity and the hypothetical posed to the vocational expert. In other words, courts "want to know how well the ALJ studied the record, and how thoroughly he understood [the claimant's] specific impairments (or lack thereof) before making his decision about [the claimant's] residual functional capacity, and ultimately, [the claimant's] disability claim." *Holley*

6

*v. Comm'r of Soc. Sec.*, 590 F. App'x 167, 168 (2014). The Court therefore rejects the Report and Recommendation to the extent it suggests otherwise and Defendant's Objections on that issue.

Nevertheless, the Court disagrees with Defendant that the ALJ's finding that Ms. Westwood was limited to work involving "routine, repetitive tasks . . . and infrequent changes in the work setting" adequately conveyed her credibly established difficulties with concentration, persistence, or pace. It appears from the record that the ALJ credited evidence that Ms. Westwood suffered from severe fatigue. At the administrative hearing, Ms. Westwood testified that she suffers from unpredictable and extreme fatigue, impaired concentration, and short-term and long-term memory loss. (R. 35-36, 48). The ALJ found, after apparent careful consideration of Ms. Westwood's medical records, "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible as discussed in detail below." (R. 70). Unfortunately, in the discussion that followed, the ALJ did not clearly explain which aspects of Ms. Westwood's purported symptoms were credibly established and which were not. The ALJ also assigned significant weight to the opinion of the state agency psychologist, who found that Ms. Westwood has moderate difficulties in maintaining concentration, persistence, or pace, and experiences symptoms of depression, anxiety, and fatigue. (R. 87-88). It is reasonable to conclude that extreme fatigue may impair one's ability to maintain a particular pace at work. Thus, the credible evidence that Ms. Westwood suffers from extreme fatigue is also credible evidence that Ms. Westwood has moderate difficulties with pace.

Despite the fact that the ALJ apparently credited the state agency psychologist's conclusion that Ms. Westwood suffered from extreme fatigue (and it is not clear to what extent the ALJ credited Ms. Westwood's testimony on that point), neither the ALJ's determination of the residual functional capacity nor the hypothetical posed to the vocational expert clearly addressed Ms. Westwood's moderate difficulties with pace. Defendant argues that limiting the residual functional capacity and the hypothetical posed to the vocational expert to "routine, repetitive tasks" and "only infrequent changes in the work setting" accounts for Ms. Westwood's moderate difficulties, but they do little to incorporate Ms. Westwood's credibly established, moderate difficulties with pace resulting from fatigue. Indeed, the vocational expert testified that an inability to perform "routine, repetitive tasks" at a sufficient rate may result in the claimant being found disabled. (*See* R. 55-56). Because the ALJ's hypothetical was flawed, it cannot serve as substantial evidence to support the ALJ's determination and remand is warranted.[2] *See, e.g.*, *Ramirez*, 372 F.3d at 550; *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 2004); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). Therefore, with respect to the adequacy of the residual functional capacity and the hypothetical posed to the vocational expert, the Court accepts the conclusions of the Report and Recommendation and overrules Defendant's Objections.

Defendant also argues that *Ramirez* is not relevant to this case because the plaintiff in that case "often" had difficulties with concentration, persistence, or pace, and Ms. Westwood has

---

[2] Defendant further argues that "even if the evidence warranted inclusion of an additional limitation regarding pace, remand nonetheless would be inappropriate here because 'pace' is not an issue in light of the jobs identified by the [vocational expert] that Plaintiff could perform." (Def.'s Obj. 6). However, the posing of a defective hypothetical precludes finding that the vocational expert's testimony provides substantial evidence to support the ALJ's ultimate determination. *See, e.g.*, *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). The Court will not opine on the demands of different jobs. That is the role reserved for the vocational expert.

8

"moderate" difficulties with concentration, persistence, or pace. Although the change in regulatory language may be material in some cases, the Court need not decide that issue here because the Court agrees with Magistrate Judge Wells, who aptly wrote that "the change in regulatory terminology does not circumvent *Ramirez*'s requirement that the ALJ's hypothetical questions accurately convey the limitations the ALJ has found." (R&R at 10). In this case, the ALJ assigned great weight to the state agency psychologist's opinion that Ms. Westwood suffered from extreme fatigue and had moderate difficulties in maintaining concentration, persistence, or pace, and assigned some unspecified weight to Ms. Westwood's testimony that she continues to suffer from extreme fatigue. Because the ALJ failed incorporate into the residual functional capacity or the hypothetical posed to the vocational expert Ms. Westwood's apparent moderate difficulties with pace resulting from her extreme fatigue, the ALJ's determination is not supported by substantial evidence and Defendant's Objections are overruled to the extent they claim that *Ramirez* does not apply in this case.

## V.  CONCLUSION

The Court is not convinced that the ALJ "gave the vocational expert enough information to provide a sound opinion about the types and numbers of jobs that were available," *Holley*, 590 F. App'x at 169, because the ALJ found credible evidence in the record showing that Ms. Westwood has moderate difficulties with concentration, persistence, or pace that were not reflected in the residual functional capacity or the hypothetical posed to the vocational expert. As a result, the Court will remand this matter to the ALJ for the determination of a residual functional capacity and the crafting of a hypothetical that more precisely conveys the nature of

Ms. Westwood's moderate difficulties with concentration, persistence, or pace in light of the apparently credible evidence of Ms. Westwood's extreme fatigue. An appropriate Order follows.

                                              BY THE COURT:

                                              S/Gene E.K. Pratter
                                              GENE E.K. PRATTER
                                              UNITED STATES DISTRICT JUDGE